IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

CARITAS TECHNOLOGIES, INC.          §

V.                                  §           No.  2:05CV339

COMCAST CORPORATION                 §

## ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the

Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Plaintiff

Caritas Technologies, Inc.'s First Motion to Compel Answers to Interrogatory Nos. 1-10 (Docket

Entry # 36) and Plaintiff Caritas Technologies, Inc.'s First Motion to Compel Production of

Documents (Docket Entry # 45) were referred to the Honorable Caroline M. Craven for the purposes

of hearing and determining said motions.   The Court, having reviewed the relevant briefing and

hearing arguments of counsel,[1] is of the opinion Plaintiff's motions should be **GRANTED IN PART**

**and DENIED IN PART**.

### I.  FACTUAL BACKGROUND

On July 27, 2005, Caritas Technologies, Inc. ("Caritas") filed a complaint against Comcast

Corporation ("Comcast") for infringement of Caritas' United States Patent No. 6,661,779, entitled

"Dial Up Telephone Conferencing System Controlled By An Online Computer Network" ("the

Caritas patent").   Caritas alleges Comcast's Voice Over Internet Protocol ("VOIP") phone services,

including Comcast's "Digital Voice" service, employ systems and use methods that infringe multiple

claims of the Caritas patent.

---

[1] On January 26, 2006, the Court conducted a hearing on Plaintiff's motions.

## II.  PROCEDURAL BACKGROUND

On October 24, 2005, Caritas served its first set of interrogatories on Comcast.  Comcast responded to the interrogatories on November 28, 2005 with promises to provide documents that would answer the interrogatories and with objections.  Caritas' document requests were also served on Comcast on October 24, 2005.  Again, Comcast responded on November 28, 2005 with promises to provide relevant documents and with objections to many requests.

## III.  PLAINTIFF'S MOTIONS

### A.      Motion to Compel Answers to Interrogatories

In its first motion, Caritas moves, pursuant to Federal Rule of Civil Procedure 37(a), for an Order compelling Comcast to provide full and complete responses to each of Caritas' Interrogatory Nos. 1-10.  Caritas asserts Comcast has not provided a single substantive answer in response to Caritas' interrogatories. Instead, according to Caritas, Comcast's responses contain only objections or references to unspecified documents that have not been produced.  At the hearing, Caritas alerted the Court that Comcast had provided answers referring Caritas to certain documents. Specifically, on the morning of the hearing, Comcast supplemented its interrogatory answers with specific Bates numbers, pointing Caritas to specific documents.

### B.      Motion to Compel Production of Documents

In its second motion, Caritas moves, pursuant to Federal Rule of Civil Procedure 37(a), for an Order compelling Comcast to produce documents requested in Caritas' First Set of Requests for Production of Documents and Things.  Caritas asserts Comcast has not yet produced a single document and has made numerous improper objections to the scope of documents requested.

At the hearing, Caritas elaborated on Comcast's document production to date.

2

Approximately 25 documents were produced to Caritas at the end of December 2005.  On January 13, 2006, three additional documents related to the Comcast's accused system were provided. Additional supplemental answers were provided to Caritas' counsel before the hearing.  Caritas' counsel stated he had not had the opportunity to review the supplemental answers.

Comcast explains its production as follows.  Because of the breadth of the documents, Comcast specifically set forth in writing what it would be producing and when it would be producing the requested information.  Comcast asserts it produced a large number of documents in December (corporate educational documents used to train people in the field) and a large number in mid-January (disclosures under the Local Rules, *i.e.* documents sufficient to show how the system works).  Comcast further asserts approximately 570,000 pages of material or 30,000 documents are in the process of being produced, and the production is still going.  Comcast states it has yet to load another 3 million pages of materials.

## IV.  APPLICABLE LAW

FED. R. CIV. P. 26(b)(1) provides parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).  Specifically, Rule 26(b)(2)(iii) allows the Court to limit discovery if the burden or expense of the proposed discovery outweighs the likely benefits of the discovery, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Local Rule CV-26(d) provides guidance in evaluating whether a particular piece of information is "relevant to the claim or defense of any party."  Rule 26(d) provides, in pertinent part,

as follows: (1) information is relevant if it is information likely to have an influence on or affect the outcome of a claims or defense; (2) information is relevant if it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and (3) information is relevant if it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense.

## V. INTERROGATORIES

### A.    Comcast's Reliance on Fed. R. Civ. P. 33(d)

### 1.    Arguments

Throughout its responses to Caritas' First Set of Interrogatories (specifically Interrogatory Nos. 1, 4, 5-7, and 10), Comcast relied on Federal Rule of Civil Procedure 33(d) as grounds for referring Caritas to documents in lieu of providing a substantive answer.  Caritas asserts it is not enough for responsive documents to be made equally available to Caritas; instead, Rule 33(d) requires that the burden of ascertaining the answers to interrogatories be "substantially the same" for the parties. Fed. R. Civ. P. 33(d).  Caritas states it is without Comcast's institutional knowledge or level of expertise regarding Comcast's own operations, and thus it is inappropriate for Comcast to refer Caritas to documents to ascertain basic information sought in the interrogatories.

In its supplemental opposition to Caritas' motion, Comcast represented to the Court that by January 26, 2006, Comcast had supplemented its responses with specific bates range references, making the burden on the parties the same in answering the interrogatories.

### 2.    Fed. R. Civ. P. 33(d)

Under Rule 33(d), "when a response to an interrogatory may be derived from business records and when the burden of deriving the answer from the records is substantially the same for

4

both sides, the production of these records sufficiently answers the interrogatory."  *Govas v. Chalmers*, 965 F.2d 298, 302 (7th Cir. 1992); *see* FED. R. CIV. P. 33(d).[2]  The rule further provides that the "specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer may be ascertained." FED. R. CIV. P. 33(d).

"The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them." *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 564 (D.Kan. 1997).  A plaintiff may not simply refer a defendant to a mass of records but must "specifically identify which documents contain the requested *information* in its answer to the interrogatory.  If the party cannot comply with these requirements, it must otherwise answer the interrogatory fully and completely."  *Id.* (*citing R.W. Thomas Const. Mgmt. Co. v. Corrugated Servs., Inc.*, 1995 WL 592539 (E.D. Pa. 1995)).

The court in *O'Connor, et al. v. Boeing North American, Inc., et al.*, 185 F.R.D. 272 (C.D. Cal. 1999), stated that without "detailed specification by category and location of responsive documents, the burden of deriving the answers to the interrogatories is not the same for the parties; rather, it would be easier for persons employed by the [answering party] to locate responsive documents."  *Id.* at 278.

**3.     Discussion**

Comcast has supplemented its responses with specific bates range references.  Although Caritas asserts it does not possess the same level of expertise regarding Comcast's own operations,

---

[2] The Seventh Circuit cited  FED. R. CIV. P. 33(c), the substance of which now appears in subsection (d).

Comcast has demonstrated, that by its' having specifically identified responsive documents, the burden of ascertaining the answer to the interrogatories is substantially the same for both parties. For these reasons, this portion of Caritas' motion is **DENIED**.

**B.     Interrogatory Nos. 2 and 3**

**1.     Arguments**

Interrogatory No. 2 requests that Comcast identify the facilities and geographic areas in which Comcast or any other person has conducted or conducts "Activities" related to Comcast Phone Service and Comcast VOIP Components.  Interrogatory No. 3 seeks, for each facility identified in response to Interrogatory No. 2, a list of the "Activities" conducted at each identified facility, the time period in which those "Activities" were conducted, and the VOIP Components which have been located at the facility.

Comcast answered with a series of objections regarding the relevancy and breadth of the interrogatories.  Specifically, Comcast objected that the term "Activities" as defined by Caritas, is so broad that the interrogatories require Comcast to identify every single type of business conduct that takes place at the requested facilities.  Comcast further objected that its services and products, other than the Comcast Digital Voice service, are irrelevant to the claims involved in this litigation.

Caritas contends Comcast has no basis on which to object to the relevancy of Interrogatory Nos. 2 and 3.  According to Caritas, the geographic location of Comcast's Phone Service and Comcast's VOIP Components and the related "Activities" undertaken in support of those facets of Comcast's business are directly relevant to the claims and defenses at issue in this litigation. Caritas maintains the "Activities" referenced in these interrogatories go directly to the nature and extent of Comcast's infringing services, and include R&D, design, manufacture, testing, implementation,

management and operation of those services.  Caritas further asserts the "Activities" defined in Caritas' interrogatories target information important to Caritas' damages calculations, including information on Comcast's marketing, advertising and billing.

Although Comcast objects that Interrogatory Nos. 2 and 3 call for information about Comcast services other than Comcast Digital Voice, Caritas states it has never limited its infringement allegations to that particular Comcast VOIP service, and information regarding Comcast's non-VOIP phone services are certainly relevant to this case.  For example, Caritas states it is entitled to this information as it must be permitted to establish whether such services are themselves infringing, and/or whether they may be considered to be non-infringing alternatives, questions which are fundamental and common to every patent infringement case.

In response, Comcast first states that despite the overbreadth of the interrogatories, it agreed to provide Caritas with tailored responses to Interrogatory Nos. 2 and 3.  With respect to Interrogatory No. 2, Comcast agreed to identify each geographic territory in which it has launched its Digital Voice service or for which Comcast has presently scheduled a launch of that service. Comcast also agreed to produce and specifically identify any documents, to the extent they exist, that list the physical facilities that include equipment used in the Digital Voice service. Comcast indicated it would provide this amended answer in conjunction with its mid-January document production.

With respect to Interrogatory No. 3, Comcast agreed to produce and specifically identify detailed technical specifications that describe how its Digital Voice service operates. Comcast also agreed to provide the launch dates of the Digital Voice service in each geographic market or identify specific documents that provide this information. Finally, to the extent they exist, Comcast indicated

it would produce prior versions of technical specifications sufficient to describe any changes in the way the system operates.

Comcast objects to Caritas' attempt to seek discovery into non-accused systems.  Comcast states that by limiting its response to the Digital Voice service, Comcast has complied with the reasonable scope of Caritas' requests.  Because Caritas has not accused other services of infringing or listed other services in its preliminary infringement contentions, Comcast asserts it should not be compelled to provide responses regarding other services.  Comcast states that, if at some point other services become relevant as either non-infringing alternatives or even as alleged infringing services themselves, Comcast will supplement its answers to Interrogatory Nos. 2 and 3.

Comcast also objects to Caritas' definition of "Activities" which includes "any or all of research, development, design, manufacture, testing, implementation, management, operation, certification, qualification, marketing, advertising, use or operation, purchase, offer of sale or sale, taking of orders, billing, provision of service or components, installation, lease and/or rental of said item(s), or the decision to undertake any of the above-referenced activities." Comcast claims the definition is overly broad, including any and every activity Comcast may conduct.

**2.    Discussion**

This portion of Caritas' motion is **GRANTED IN PART** and **DENIED IN PART** as follows.  The Court agrees with Comcast that information regarding services other than its Digital Voice service is not relevant at this time.  Caritas only has the right to discover information regarding the alleged infringing service, not the right to discover information on whether it should assert a claim of infringement regarding other services.  Therefore, this objection is sustained.  To the extent other services become relevant as non-infringing alternatives or as alleged infringing services,

8

Comcast shall supplement its answers to Interrogatory Nos. 2 and 3.  However, the Court overrules Comcast's objection to Caritas' definition of the term "Activities."  To the extent it has not already done so, Comcast shall supplement its responses to Interrogatory Nos. 2 and 3, within thirty days from the date of entry of this Order, with the full range of "Activities" referenced in Caritas' requests as to the Digital Voice service.

**C.      Interrogatory No. 1**

**1.      Arguments**

Interrogatory No. 1 requests that Comcast identify each Comcast Phone Service and Comcast VOIP Component, and the suppliers thereof. As it did in response to Interrogatory Nos. 2 and 3, Comcast objected to this interrogatory on a variety of grounds, including breadth and relevance, primarily because systems other than the Comcast Digital Voice service are not at issue in the case. Comcast also referred Caritas to responsive documents Comcast would produce.  During the subsequent meet-and-confer process, Comcast agreed to refer by bates numbers particular documents identifying the major architectural components used in Comcast's Digital Voice service and those components' suppliers.  Comcast also agreed to provide a list identifying Comcast affiliates involved in providing Digital Voice services and to specifically identify documents that provide the basis for that list.

In its reply, Caritas takes issue with Comcast's promise to provide a list of "affiliates" involved in providing the Comcast Digital Voice service, stating the promise is insufficient because Caritas' Interrogatory No. 1 is not limited to "affiliates" (entities controlled or owned by Comcast). Caritas asserts it is entitled to know the identity of any third parties who are involved in supplying the accused services and components.

9

2.      **Discussion**

This portion of Caritas' motion is **GRANTED IN PART** and **DENIED IN PART** as follows.  As discussed above regarding Interrogatory Nos. 1 and 2, the Court sustained Comcast's objection that information regarding services other than its Digital Voice service is not relevant at this time.  However, the Court agrees with Caritas that it is entitled to know the identity of any third parties who are involved in supplying the accused services and components.  To the extent it has not already done so, Comcast shall amend its answer to Interrogatory No. 1, within thirty days from the date of entry of this Order, providing a list identifying any known third parties involved in providing Digital Voice services and specifically identifying documents that provide the basis for that list.

D.      **Interrogatory No. 5**

1.      **Arguments**

Interrogatory No. 5 requests Comcast's contention regarding whether or not each Comcast VOIP Service complies with PacketCable, and the basis for such contention. Comcast agreed during the meet-and-confer process to identify any PacketCable specifications practiced in whole or in part by Comcast. In addition, Comcast noted that the documents it will identify in answering Interrogatory No. 1 will also describe the system's operation with sufficient specificity to allow Caritas to assess how and whether that system adheres to any PacketCable specification.

In its reply, Caritas asserts Comcast's promise to identify the PacketCable specifications which it practices and to give Caritas information about its system does not tell Caritas whether Comcast contends its VOIP services are "compliant," which is a term of art in the industry, and the basis for that contention.

2.      **Discussion**

This portion of Caritas' motion is **GRANTED.**   To the extent it has not already done so,

Comcast shall amend its answer to Interrogatory No. 5, within thirty days from the date of entry of

this Order, stating whether Comcast contends its VOIP services are "compliant" and providing the

basis for that contention.

E.      **Interrogatory No. 8**

1.      **Arguments**

Caritas' Interrogatory No. 8 asks Comcast to "[s]tate the basis for each of its Affirmative

Defenses, Counterclaims, and the contentions set forth therein, but not limited to Comcast's

contention that it has not infringed the Caritas patent, that it has not caused others to infringe, and

that the Caritas patent is invalid or unenforceable or has been misused."   In addition to its general

objections, Comcast cited Local Patent Rule ("P.R.") 2-5, specifically objecting to Interrogatory No.

8 to the extent it seeks premature disclosure of Comcast's expert witnesses and Comcast's positions

regarding invalidity, non-infringement, and claim construction.

Caritas asserts the bases of Comcast's Affirmative Defenses and Counterclaims are highly

relevant to Caritas' ability to pursue its claims.   Caritas refers to the language of P.R. 2-5, asserting

the rule supports Caritas' right to obtain the requested information because Caritas is not seeking

Comcast's claim construction contentions or a comparison of the patent claims to any alleged prior

art.

On the other hand, Comcast asserts Caritas' interrogatory, which seeks the bases for

Comcast's affirmative defenses of non-infringement, invalidity, and misuse, seeks to elicit

Comcast's claim construction position in violation of P.R. 2-5(a).   Specifically, Comcast argues non-

infringement, invalidity, and misuse issues all depend on Comcast's construction of the asserted claims.  In addition, Comcast asserts P.R. 2-5(c) expressly allows Comcast to object to Caritas' request for Comcast's invalidity position.  Finally, Comcast asserts P.R. 2-5 provides Comcast a basis for refusing to answer Interrogatory No. 8 with respect to Comcast's defense of patent misuse.

**2.      P.R. 2-5**

P.R. 2-5 provides that the Patent Local Rules shall not be used as a basis for refusing to provide information as premature, except with respect to certain categories of information set forth in subparts (a) – (d).  The first of these categories protects a party from having to prematurely answer interrogatories "seeking to elicit [its] claim construction position."  P.R. 2-5(a).  In addition, P.R. 2-5(c) provides a party may object to an interrogatory "seeking to elicit from an accused infringer a comparison of the asserted claims and prior art."

**3.      Discussion**

Comcast has not provided, and the Court has not located, case law supporting Comcast's position that P.R. 2-5 permits Comcast to refuse to disclose the bases for its affirmative defenses and counterclaims.  Caritas has represented to the Court that Interrogatory No. 8 does not seek Comcast's claim construction contentions or a comparison of the patent claims to any alleged prior art. Therefore, P.R. 2-5 does not provide Comcast a basis for objecting to Caritas' Interrogatory No. 8 as premature.  Comcast's objections are overruled, and this portion of Caritas' motion is **GRANTED**.  To the extent it has not already done so, Comcast shall amend its answer to Interrogatory No. 8 within thirty days from the date of entry of this Order.

## VI.  DOCUMENT PRODUCTION

**A.     Caritas' Motion, Generally**

In its second motion, Caritas moves for an Order compelling Comcast to produce documents requested in its First Set of Requests for Production of Documents and Things.  At the hearing, the parties focused on Comcast's refusal to produce the following documents: (1) discovery regarding phone services other than the voice product; (2) discovery regarding non-infringement position; and (3) discovery regarding CableLabs and PacketCable.  In considering Comcast's general and specific objections below, the Court keeps in mind Comcast's continuing document collection, review, and production to Caritas.

**B.     Non-Accused Systems**

In general objection 8, Comcast objects to certain Caritas definitions which relate to products other than the Comcast Digital Voice service.  Comcast seeks to limit document production to documents relating solely to Comcast's Digital Voice service.  Caritas contends it has never limited its infringement allegations to that specific service, and moreover, information regarding Comcast's non-VOIP phone services are relevant to establish whether such services are infringing and/or whether they may be considered to be non-infringing alternatives.  At the hearing, Caritas referred to allegations contained in its Complaint, asserting  there are at least several services that infringe.  Caritas states it is entitled to discovery on these claims.

As held above, Comcast's non-accused systems are outside the scope of discovery at this time.  Although Caritas' Complaint contains general language about infringement by "other" unidentified services, the Complaint only specifically alleges that the Digital Voice services infringes Caritas' patent.  (FAC ¶ 13).   In addition, in its preliminary infringement contentions, dated

November 18, 2005, Caritas provided Comcast with a chart purporting to list its element-by-element allegations of infringement of this service.  Caritas did not allege infringement by any other service in its preliminary infringement contentions.   For these reasons, the Court sustains Comcast's general objection to Caritas' definitions that seek to include products other than Comcast's Digital Voice service.

## C.   Definition of "Comcast"

In Comcast's general objection 9, Comcast objects to Caritas' definition of "Comcast" to the extent it requires Comcast to collect and produce documents from local offices of affiliated operating companies. Comcast states it has hundreds of affiliated operating companies and municipal franchisees that provide access to its cable systems. According to Comcast, besides providing a link to the cable network, these affiliates are not involved in developing or operating Comcast's cable-based services; that responsibility resides with the corporate headquarters and regional offices. Comcast contends the cable affiliates allow subscribers to tap into Comcast's cable network and do not otherwise develop, contribute to, or control those services.

Comcast asserts collecting and producing such documents would be highly burdensome and expensive, and Caritas has not shown a need for the documents.  Comcast instead agrees to produce responsive documents from its regional offices and its corporate offices in Philadelphia.   Comcast asserts Caritas's preliminary infringement contentions allege that Comcast's Digital Voice service infringes at the network level, not at the municipal-franchisee level, and thus Caritas has no basis to pursue such over-burdensome discovery.

The Court finds the requested information from local offices of Comcast's affiliated companies is relevant to the claims and defenses involved in this lawsuit.  Comcast has not

convinced the Court that collecting and producing documents from affiliated operating companies would be so overly burdensome or expensive to limit Caritas' discovery of the relevant information requested.  Comcast's general objection 9 to Caritas' Request Nos. 1-14, 16-21, 23-26, 29-37, and 39 is overruled.  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas responsive documents from affiliated operating companies as well as from Comcast's regional and corporate offices.

**D.    Definition of "Activities"**

Again, as a general matter, Comcast objects to Caritas' definition of "Activities in numerous document requests, including Request Nos. 9-18 and 30.  Caritas defined "Activities" to include: "any or all of research, development, design, manufacture, testing, implementation, management, operation, certification, qualification, marketing, advertising, use or operation, purchase, offer of sale or sale, taking of orders, billing, provision of service or components, installation, lease and/or rental of said item(s), or the decision to undertake any of the above-referenced activities."

Comcast asserts the definition is overly broad.  For example, in Request No. 11, Caritas asks for "each document relating to the Activities in which Comcast is involved with respect to each Comcast VOIP Service." Comcast asserts that in the context of this request, the term "Activities" requires Comcast to produce, among many other documents, every bill sent to every consumer, every draft of every piece of marketing or advertising, every purchase order, and every record of service calls and installations related to Comcast VOIP services. Comcast contends the broad definition would require Comcast to produce tens of millions of pages of documents which bear no relevance on the issues in this case.

The Court agrees with Caritas that it is entitled to documents regarding the nature, scope, and

15

extent of Comcast' activities that are alleged to infringe Caritas' patent.  The "Activities" defined by Caritas include such information, including research, development, design, manufacture, testing, implementation, management, and operation of the accused products and services.  The definition also includes certification and qualification of the VOIP services which Caritas asserts is relevant to Comcast's ties to the research arm of the cable industry, CableLabs, which certifies and qualifies VOIP equipment pursuant to its "PacketCable" standard.  The Court addresses discovery regarding CableLabs and PacketCable below.  In the meantime, Caritas persuasively argues the certification and qualification issues are also relevant to numerous public statements that its VOIP components and service are PacketCable compliant.  In addition, Caritas' definition includes activities relevant to Caritas' damages claims, including marketing, advertising, offer of sale or sale, taking of orders, billing and lease and/or rental.

The Court, having reviewed the parties' arguments, overrules Comcast's objection to Caritas' definition of the term "Activities."  To the extent it has not already done so, Comcast shall supplement its document production in response to Request Nos. 9-18 and 30, within thirty days from the date of entry of this Order, with the full range of "Activities" referenced in Caritas' requests as to the Digital Voice service(s).

**E.     Definitions of "Comcast VOIP Service," "Comcast VOIP Service Provider," and "Comcast VOIP Components"**

**1.     Definitions**

Comcast has objected in numerous requests, namely Request Nos. 9, 10, 11, 12, 13, 15, and 16, to the definitions of "Comcast VOIP Service," "Comcast VOIP Service Provider," and/or "Comcast VOIP Components."  "Comcast VOIP Service" refers to any VOIP Service that is, in

whole or part, provided, operated, used, offered for sale, sold, or marketed by or on behalf of Comcast, including, but not limited to the service known as Comcast Digital Voice, and any precursors, prototypes, successors, iterations, or next generations of such VOIP Service. "Comcast VOIP Service Provider" means any person, including Comcast, that provides, assists in the provision of, or causes others to provide, any aspect of a Comcast VOIP Service. "Comcast VOIP Component" refers to any VOIP Component used in the implementation of any Comcast VOIP Service, including any Cable Modem (CV), Multimedia Terminal Adapter (MTA or E-MTA), Cable Modem Termination System (CMTS), CMTS Gate, router, switch, Call Management Server (CMS) and so on. The Court will address the definitions in the discussion below of each specific Request objected to by Comcast.

### 2.     Requests Nos. 9 and 10

Request No. 9 seeks documents relating to Comcast's knowledge or lack of knowledge regarding Activities conducted by other VOIP Service Providers in connection with Comcast VOIP Service or Comcast VOIP Components. Request No. 10 seeks documents relating to actions taken by Comcast to aid other VOIP service providers in the conduct of any Activities in connection with Comcast VOIP Service or Comcast VOIP Components.

Comcast objected to these requests based on Caritas' overbroad definitions of "Comcast VOIP Service" and "Comcast VOIP Components." Comcast also objected based on the definition of "Activities." Finally, Comcast objected to the document request as vague because it called for Comcast's "knowledge" as a corporation of certain issues. Comcast asserts it has no "knowledge." Comcast states it complied with the reasonable scope of the requests, however, by promising to produce documents from its central and regional offices related to the accused Digital Voice system

17

and regarding the underlying topic of the request, Comcast's relationships and communications with other VOIP Service Providers.

Caritas takes issue with Comcast's agreement to provide a response to Request No. 9, limiting the documents to those sufficient to describe Comcast's relationships with other VOIP Service Providers. According to Caritas, this limited production excludes relevant documents concerning, for example, the extent of Comcast's knowledge regarding the full range of Activities undertaken in connection with any VOIP services and components provided by non-affiliated entities in connection with Comcast's VOIP offerings.   Similarly, Caritas takes issue with Comcast's agreement to provide a response to Request No. 10, limiting the documents to those sufficient to describe Comcast's communications with other VOIP Service Providers, a distinct subset of documents relating to Comcast's actions in aiding other VOIP Service Providers. Caritas asserts the full scope of the documents requested by Caritas are highly relevant to Caritas' claims of contributory infringement and inducement.

The Court finds Request Nos. 9 and 10 have been narrowly tailored and focus on the Activities taken by other VOIP providers in connection with Comcast's VOIP services or components.  This information is relevant to Cartias' infringement and inducement claims.  The fact that Caritas has not alleged infringement by any other entity does not change the result.   The Court cannot say at this time that Caritas has no viable infringement theory.

For these reasons, Comcast's objections to Request Nos. 9 and 10 are overruled.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.**  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive

18

to Request Nos. 9 and 10.

**3.     Request Nos. 11-13**

Request Nos. 11-13 seek documents relating to Comcast's Activities in connection with Comcast VOIP Services or Components or undertaken by any Comcast VOIP Service Provider. Again, Comcast objected based on Caritas' overbroad definitions of "Comcast VOIP Service," "Comcast VOIP Components," "Comcast VOIP Service Provider," and "Activities." Beyond that, Comcast did not object to the underlying topic of the request. Comcast has agreed to provide responsive documents regarding its Digital Voice service, including documents sufficient to describe its relationship with its affiliates and the functioning of related components.

Comcast's objections are overruled.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.**  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request Nos. 11, 12, and 13.

**3.     Request No. 15**

Request No. 15 asks Comcast to produce organizational charts for Comcast Corporation and various ones of its divisions and subsidiaries. Comcast objected to the scope of this request to the extent it was not limited to parts of Comcast involved in delivering the Digital Voice service. Caritas moved to compel Comcast to produce additional organizational charts unrelated to Comcast's provision of its Digital Voice service. Comcast maintains its objection for reasons similar to its objections to Caritas' definitions of terms such as "Comcast VOIP Service" and "Comcast VOIP Components" – the discovery request is not tailored to the infringement allegations.

As discussed above, Caritas only has the right to take discovery into Comcast's accused

infringing system, the Digital Voice system. Although Comcast argues it should not have to produce organizational charts for any divisions not involved in providing that service, the Court finds Caritas is entitled to organizational charts to show the corporate interrelationship of the Comcast entities responsible for Activities including the funding, planning, marketing, research and development of infringing VOIP systems, in addition to those involved with "delivering" Comcast's Digital Voice service. For this reason, Comcast's objections are overruled.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.**  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request No. 15.

### 4.      Request No. 16

Request No. 16 seeks documents relating to the relationship between and among Comcast, its subsidiaries, and other Comcast VOIP Service Providers and Comcast VOIP Component Suppliers with respect to those entities' conduct of Activities in connection with each Comcast VOIP Service and each Comcast VOIP Component, including Comcast's "knowledge of, involvement in, influence over, or control of, those entities' conduct of such Activities." Comcast's objections focused on Caritas' failure to define these terms in a manner that relates to its infringement allegations as well as any vagueness introduced by the use of the term "knowledge." To the extent the request covered the accused infringing system, Comcast stated it would produce documents describing its relationship with "affiliates" involved in delivering the Digital Voice service. Comcast refused to produce documents regarding non-accused products and those concerning the relationship between Comcast, its subsidiaries, and other, non-affiliated VOIP service and component providers.

In its motion, Caritas asserts Request No. 16 is not limited to documents describing

Comcast's relationship with "affiliates" only, but also includes documents concerning the relationship between Comcast, its subsidiaries, and other, non-affiliated VOIP service and component providers as those documents are relevant to Caritas' claims of infringement, including inducement.

Comcast's objections are overruled. Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.** To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request No. 16.

## F.    Discovery Regarding Non-Asserted Patents

Request Nos. 34 and 35 seek documents concerning actual or potential infringement of the Caritas patent and other listed patents by Comcast, any Comcast VOIP Service Provider, or any Comcast VOIP Component Supplier. In addition to its general objections, Comcast objected based on relevance. Comcast noted that the other listed patents, U.S. Patent Nos. 6,480,074. 6,266,328, and 6,072,780, do not concern Caritas' allegation that the Digital Voice service infringes the '779 patent. Subject to those objections, Comcast agreed to produce the requested documents with respect to the '779 patent and the accused Digital Voice service.

Comcast asserts the Court should not compel Comcast to produce any documents beyond those already promised. Because Caritas has not asserted U.S. Patent Nos. 6,480,074, 6,266,328, and 6,072,780 against Comcast, Comcast asserts documents regarding those patents are irrelevant to Caritas' sole infringement allegation.

In its motion, Caritas asserts the related patents and the patent-in-suit share a common disclosure and a number of claim elements, and therefore documents in Comcast's possession

discussing these closely related patents are highly relevant.  Caritas further contends Comcast itself

has asserted that information regarding the related patents is relevant to this lawsuit as many of its

own document requests focused on that topic.

The Court agrees with Comcast that documents regarding those patents not asserted against

Comcast in this case are not relevant.  Comcast's objection is sustained to the extent Comcast does

not assert information regarding the same patents is relevant in its own document requests. This

portion of Caritas' motion is **DENIED.**

**G.     Discovery Regarding CableLabs and PacketCable**

**1.     Request Nos. 8, 17, 18, 26, 27, and 28**

Request No. 8 seeks documents relating to whether or not any Comcast VOIP Service, or a

call transmitted over Comcast's VOIP Service, is compliant with PacketCable. Comcast objected

to the relevance of documents relating to Comcast VOIP Services not compliant with PacketCable

and stated that this aspect of the request was vague and ambiguous.  Further, where Comcast agreed

to produce documents in response to this request, it did so only to the extent it promised to produce

"documents sufficient to identify" the PacketCable specifications practiced by Comcast's Digital

Voice service. Caritas asserts that in addition to the unwarranted limitation to Digital Voice,

Comcast's "documents sufficient to identify" response is significantly narrower than Caritas' request

and will exclude relevant documents, including internal Comcast discussions about the compliance

of Comcast's VOIP services and components with PacketCable, as well as communications with

third parties (*e.g.*, CableLabs) regarding the same.  According to Caritas, such documents, for

example, communications with CableLabs regarding how the components in Comcast's VOIP

system operate, would contain admissions by Comcast regarding the functioning of the accused

system and are highly relevant.

Request Nos. 17 and 18 seek documents relating to communications concerning any Comcast VOIP Service, any Comcast VOIP Component, any VOIP Service, any VOIP Component, and PacketCable. Comcast's responses to Request Nos. 17 and 18 focused on the portion of the requests related to PacketCable and indicated that Comcast would only produce documents sufficient to identify the PacketCable specifications practiced by Comcast. Caritas asserts this agreement encompasses only a narrow subset of the documents requested.

Caritas asserts Requests Nos. 17 and 18 seek documents relating to communications concerning both Comcast and non-Comcast VOIP services and components in addition to communications relating to PacketCable and CableLabs. For the following reasons, Caritas contends there is no basis for Comcast to limit its response to the PacketCable portion of the request: (1) communications relating to Comcast VOIP services and components are likely to indicate Comcast's level of knowledge regarding the operation of those components and may include admissions about how those components interact to form the infringing VOIP systems; and (2) communications relating to non-Comcast VOIP services and components likely reflect Comcast's level of knowledge regarding VOIP and PacketCable generally, and may well provide important assessments of the VOIP market relevant to Caritas' damages claims.

Request Nos. 26-28 seek documents regarding the interrelationship of Comcast and CableLabs. Comcast responded with objections and complete refusals to produce responsive documents. Request No. 26 seeks documents concerning communications with CableLabs about Comcast VOIP Services or Components. In its response to Request No. 26, Comcast limited its answer to "documents sufficient to identify" the PacketCable specifications practiced by Comcast.

23

Caritas asserts this narrow response excludes relevant documents regarding the operation of the accused Comcast services, including, for instance, communications between Comcast and CableLabs about how Comcast's VOIP services and systems operate and whether or not they are compliant with PacketCable.

Request No. 27 seeks documents concerning Comcast's relationship with CableLabs, and Request No. 28 seeks documents concerning Comcast's involvement with the development of the PacketCable standard. In order to prove inducement, Caritas must establish that Comcast knowingly and actively induced infringement of the Caritas patent by others. Caritas asserts the requested documents relating to the extent to which Comcast has been informed of, has controlled, or has influenced the development of the CableLabs' PacketCable standard are highly probative of the level of Comcast's knowledge of the PacketCable-compliant system used to infringe the Caritas patent.

**2.      Discussion**

 CableLabs and PacketCable are relevant to this case.  As urged by Caritas, in any patent infringement case, the plaintiff needs to know about the research and development involved in creating an accused system.  In this case, according to Caritas, some of the research and development was outsourced to CableLabs.  It appears Comcast has adopted PacketCable for its VOIP services and requires its VOIP service providers and VOIP component suppliers ensure their services and components are PacketCable compliant. Moreover, Caritas made frequent reference to PacketCable in its infringement contentions, and Comcast made reference to PacketCable as prior art in its invalidity contentions.  The Court also finds the requested discovery is relevant to contributory claims of inducement infringement.   The Court cannot say at this time that Caritas has no viable

infringement theory as urged by Comcast.

For these reasons, Comcast's objections are overruled.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.**  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request Nos. 8, 17, 18, 26, 27, and 28.

## H.    Comcast's Trademarks

In Request Nos. 32 and 33, Caritas seeks documents concerning the use and licensing of Comcast trademarks and Comcast's control of the quality or nature of any Comcast VOIP Service with which those marks are used. Comcast objected to these document requests as being irrelevant to the patent infringement allegations that make up Caritas's case. In moving to compel, Caritas argued that such trademark-related documents are relevant to Caritas' theory of induced infringement.

The Court cannot say at this time that Caritas has no viable infringement theory.  The Court finds the requested information relevant.  Comcast's objections are overruled.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.**  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request Nos. 32 and 33.

## I.    Request No. 22

Request No. 22 seeks documents relating to Comcast's acquisition or potential acquisition of VOIP services, including any VOIP service Comcast expects to obtain in connection with

transactions with Time Warner, Inc. and Adelphia Communications Corporation. In response, Comcast merely referred Caritas to Comcast's public disclosure statements available on the FCC official website. Caritas states that given the confidentiality order issued by the FCC related to the Time Warner and Adelphia transactions, Comcast's directive to look to the publicly filed documents is disingenuous. Caritas further asserts Request No. 22 is not limited to Comcast's public filings and, for example, seeks Comcast's internal documents regarding acquisition of VOIP Services. According to Caritas, this information is tied directly to Comcast's plans regarding the expansion of its VOIP business and is directly relevant to Caritas' infringement claims and damages calculations.

Comcast's objections are overruled.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.**  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request No. 22.

**J.      Request No. 25**

Request No. 25 seeks documents concerning communications to governmental entities, including the FCC, relating to any Comcast VOIP Service. In addition to citing its general objections, Comcast objected because the request is unduly burdensome, irrelevant to claims or defenses in the case, and not reasonably calculated to lead to the discovery of admissible evidence. In its motion to compel, Caritas asserts the requested documents are clearly relevant.

Comcast's objections are overruled.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion to compel is **GRANTED.**  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request No. 25.

**K.      Request No. 29 and 30**

Request No. 29 seeks documents concerning any Comcast VOIP Service, Comcast VOIP Component, Comcast VOIP Provider, Comcast VOIP Component Supplier, or PacketCable, in the current or former files of, authored by, or sent or received by, a specific list of persons. Request No. 30 seeks documents sufficient to determine the employment information and involvement in Activities for those listed individuals. For example, the requests seek relevant documents from the files of Steve Craddock, Comcast's Vice President of New Media Development (who also served as Chairman of the PacketCable Business Committee) and from the files of Dave Fellows, Comcast's Executive Vice President and Chief Technology Officer (who served as Chairman of CableLab's Technical Advisory Committee).

Comcast objected for the same reasons it objected to many of Caritas' other document requests, asserting Caritas' definitions of critical terms encompassed non-accused services. Comcast again objected to Caritas' use of the term "Activities." Comcast also objected to the requests because they improperly sought discovery into Comcast's communications regarding PacketCable.

Caritas asserts Comcast's non-responsive answers to these narrowly focused requests only promise to provide documents "sufficient to describe the organization of any group involved with the Comcast Digital Voice Service." According to Caritas, that answer is insufficient because it excludes relevant documents from the files of individuals likely to be involved in the infringing aspects of Comcast's business and documents relating to those individuals' involvement in Activities related to infringement by Comcast.

The Court has previously overruled Comcast's objections regarding PacketCable and the definition of "Activities." Keeping in mind the Court's limitation of discovery into accused products

and services only, this portion of Caritas' motion is **GRANTED**.  To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas documents responsive to Request Nos. 29 and 30.

**L.      Request No. 39**

Request No. 39 seeks documents concerning any lawsuit, arbitration, patent interference proceeding, reissue or reexamination proceeding, or patent opposition or cancellation proceeding relating to any Comcast VOIP Service. Comcast incorporated its general objections and further objected based on privilege grounds.

In moving to compel this information, Caritas asserts statements made by Comcast in documents concerning VOIP are relevant to Caritas' infringement claims and may constitute admissions.  Comcast asserts the requested documents, even if in existence, contain attorney-client communications as well as reflect attorney work product. In addition, Comcast states it should not have to produce any non-privileged documents because they are not reasonably calculated to lead to the discovery of admissible evidence. In this regard, Comcast first argues it is Caritas' patent, not Comcast's patents, that are at issue in this case, and documents concerning Comcast's patents therefore have no bearing on the case.  Comcast next asserts its patents do not have any necessary or inherent connection to Comcast's accused services.

Comcast's objections are overruled to the extent any non-privileged documents responsive to this request exist.  Keeping in mind the Court's limitation of discovery into accused products and services only, this portion of Caritas' motion is **GRANTED** to the extent any non-privileged documents responsive to this request exist. To the extent it has not already done so, within thirty days from the date of entry of this Order, Comcast shall produce to Caritas non-privileged documents

responsive to Request No. 39.  Based on the foregoing, it is

     **ORDERED** that Plaintiff Caritas Technologies, Inc.'s First Motion to Compel Answers to Interrogatory Nos. 1-10 (Docket Entry # 36) is **GRANTED IN PART and DENIED IN PART** as specified in Section V.  It is further

     **ORDERED** that Plaintiff Caritas Technologies, Inc.'s First Motion to Compel Production of Documents (Docket Entry # 45) is **GRANTED IN PART and DENIED IN PART** as specified in Section VI.

     **SIGNED this 9th day of February, 2006.**

 

 

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE